Tommy DODD, Appellant,

v.

John D. HARPER, Jr., Administrator of the Estate of Rodgers McCrary Harper, Appellee.

No. 01–82–00748–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 23, 1983.

Madeline Johnson, Paul Regnier, Houston, for appellant.

Kaaran Thomas, Houston, for appellee.

Before JACK SMITH, DUGGAN and LEVY, JJ.

## OPINION

LEVY, Justice.

This is an appeal from a rejection of appellant's secured claim against the estate of decedent, Rodgers McCrary Harper.

Appellant presented a claim to the administrator of the estate of Rodgers McCrary Harper, alleging that appellant had loaned Harper, individually and d/b/a East Yellow Knife Trading Company, $100,000.00 on November 19, 1980. Attached to the claim was (1) an alleged promissory note from East Yellow Knife Trading Company, a sole proprietorship of Rodgers McCrary Harper, to appellant; (2) an alleged deed of trust from East Yellow Knife Trading Company to appellant securing repayment of the loan by placing a lien on the townhome of the decedent; and (3) an alleged guaranty agreement executed by Rodgers McCrary Harper "absolutely and unconditionally" guaranteeing full repayment of the loan. The promissory note, guaranty agreement, and deed of trust were allegedly all signed by Rodgers McCrary Harper.

The administrator denied the execution of the documents and contended that the subject property of the alleged deed of trust was the homestead of the decedent. The administrator further contended that the contract between the deceased and appellant was for the illegal purchase of controlled substances in South America, and was therefore unenforceable.

In his findings of fact, the trial court judge found that the alleged promissory note, deed of trust, and guaranty agreement were not executed by the decedent, Rodgers McCrary Harper, individually or d/b/a Yellow Knife Trading Company; that no debt was due and owing by Rodgers McCrary Harper (or his Estate) to Tommy Dodd or which is represented or secured by any note, deed of trust, or guaranty agreement signed by Rodgers

McCrary Harper individually or by Rodgers McCrary Harper d/b/a Yellow Knife Trading Company; that the townhome in question was openly and obviously used by the decedent, Rodgers McCrary Harper, as a homestead; and that any monies which might have been advanced to Rodgers McCrary Harper by Tommy Dodd were advanced pursuant to an illegal contract between the parties.

Appellant challenges the sufficiency of the evidence for the above findings of fact and conclusions of law in each of his four points of error.

In his first point of error, appellant contends that there was no evidence, or, in the alternative, insufficient evidence, to sustain the trial court's finding that the promissory note, deed of trust, and guaranty agreement were not executed by the decedent, Rodgers McCrary Harper, individually or d/b/a Yellow Knife Trading Company.

The promissory note alleged in support of appellant's contention that such a note was executed was not admitted into evidence. The record indicates that neither appellant nor any other witness saw the decedent execute a promissory note payable to appellant.

On the other hand, the execution of the deed of trust and guaranty agreement by Rodgers McCrary Harper was sworn to and subscribed in the presence of a notary public, who testified to that fact. The deed of trust and guaranty agreement were admitted into evidence without objection. The appellee testified that the signatures on the deed of trust and guaranty agreement did not look like the signature of his brother, the decedent. Further, Mr. George O. Jackson, life-long friend of the decedent, identified the signature on several of the decedent's personal checks as being that of the decedent, and then testified that this signature did not resemble the signatures on the deed of trust or the guaranty agreement.

Any person familiar with the handwriting of another may testify as to the genuineness of a disputed writing claimed to be that of such other person.

The witness need not be an expert but his knowledge of the handwriting of the person in question must be shown before his testimony can be received. This may be done by showing that he has seen him write, has frequently inspected or referred to papers containing his handwriting, or in some other manner has had an opportunity to observe his handwriting. 2 Ray, Texas Law of Evidence 105, § 1433 (1980). Also, *Knox v. Campbell,* 191 S.W.2d 817, 818 (Tex.Civ.App.—Dallas 1945, no writ); *Janak v. Security Lumber Company, Inc.,* 513 S.W.2d 300 (Tex.Civ.App.—Houston [1st Dist.] 1974, no writ).

It is within the sole province of the trier of fact, who had the opportunity to observe the demeanor of the witnesses on the stand, to judge their credibility and the weight to be given their testimony, to resolve conflicts in the testimony of one witness with that of another, and to believe part of a witness' testimony and to disregard other portions thereof. *Southwestern Bell Telephone Co. v. Griffith,* 575 S.W.2d 92, 101 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.).

As the promissory note was not admitted into evidence, and there was testimony by two witnesses that the signatures on the deed of trust and guaranty agreement were not those of the decedent, we find the evidence sufficient to support the trial court's findings that the documents were not executed by the decedent. Appellant's first point of error is overruled.

In his second point of error, appellant contends that there was no evidence, or, in the alternative, insufficient evidence to sustain the trial court's finding that no valid debt existed which is due and owing by the deceased to the appellant. No note was admitted into evidence, and there was testimony from which the trier of fact could have concluded that the security instruments had been forged. Appellee stated that he did not locate among the personal effects of Rodgers McCrary Harper the $100,000.00 nor did he find any evidence

that such sum had been deposited in a bank or expended by any check by Rodgers McCrary Harper. Assuming, however, that the signatures on the deed of trust and guaranty agreement were those of the deceased, the documents would not be sufficient, in themselves, to establish the debt as they were only security given for a note that was never established. The express purpose of both documents is to secure repayment of a loan as evidenced by a particular note. It is well settled that a deed of trust must be strictly construed. *Kimberly Development Corp. v. First State Bank*, 404 S.W.2d 631 (Tex.Civ.App. —Houston 1966, writ ref'd n.r.e.). The deed of trust recites as its consideration the promissory note which was never admitted into evidence. Accordingly, consideration for the deed of trust must fail.

■ Appellant argues in his third point of error that there was no evidence, or, in the alternative, insufficient evidence to sustain the trial court's finding that the townhome in question was openly and obviously used by the decedent as a homestead. Specifically, appellant maintains that the fact that the property was owned by East Yellow Knife Trading Company and the fact that the decedent had never requested a homestead exemption for tax purposes shows that the decedent never claimed this townhome as his homestead.

Appellee testified, however, that he had determined that the only residence of the decedent, at the time of his death, was the townhome in question. Appellee further testified that from his review of the personal effects of the decedent, there was no other residence owned by the decedent at the time of his death and all of the decedent's personal effects were located at the townhome. Another witness, decedent's friend for close to twenty years, testified that decedent kept all his personal effects at the townhome, that he used and enjoyed the townhome as a person normally would a home, and that he never made any attempt to conceal from anyone the fact that the townhome was his home.

The State of Texas has extended its protection of homesteads to residences of single persons, protecting these homesteads against mortgages, except for purchase money to buy the property, money to pay for work and materials improving the property, or money to pay taxes upon the property. Tex. Const. Art. XVI § 50. It is well settled in Texas that in order to establish homestead rights, there must be proof of concurrence of usage and intent on the part of the owner to claim the land as a homestead. *Prince v. North State Bank of Amarillo*, 484 S.W.2d 405, 409 (Tex.Civ. App.—Amarillo 1972, writ ref'd n.r.e.). No specific writing is needed to claim a homestead. By the mere act of using and enjoying a property as a home, a person qualifies for the protections mandated by the Texas Constitution. *Hoffman v. Love*, 494 S.W.2d 591 (Tex.Civ.App.—Dallas 1973, writ ref'd at 499 S.W.2d 299). To assert that this protection of the Texas Constitution could be voided by a mere failure to designate the property as a homestead for tax purposes would be to render the constitutional homestead protection meaningless. The appellant's third point of error is overruled.

In his fourth and final point of error, appellant contends that there was no evidence, or, in the alternative, insufficient evidence to sustain the trial court's finding that the monies advanced by Tommy Dodd to Rodgers Harper were pursuant to an illegal contract.

The evidence concerning the illegality of the alleged contract between appellant and the decedent consists of an admission against interest by the appellant and an enormous amount of circumstantial evidence.

Appellee testified that he confronted the appellant and told him that, as administrator of the estate, he would not honor appellant's claim because it was his understanding that the alleged cash loan was to carry a five-to-one payoff on an illegal drug transaction. Appellant did not deny appellee's charges that he and the decedent had been involved in an illegal drug deal. Ap-

pellant only said that if the decedent were still alive, he would "be a gentleman" and repay the money.

■ Where a definite statement of a matter of fact, affecting a party or his rights, is made in his presence or hearing so that he understands it, and the statement is of such a nature as to call for a reply, the statement, in connection with a total or partial failure to reply, is admissible as tending to show a concession of the truth of the facts stated. *Miller v. Dyess*, 137 Tex. 135, 151 S.W.2d 186 (1941).

The circumstantial evidence indicating an illegal transaction between appellant and the decedent consists, among other matters, of the fact that appellant obtained the $100,000.00 from his father, who had borrowed it from a bank in Waco. Appellant borrowed this large sum from his father without executing a promissory note or other instrument reflecting the loan of this money. Appellant requested that his father withdraw the money from the bank in cash, place the money in small bills in a brown paper bag, and deliver it to appellant's father's home where the money was picked up by the appellant. Appellant's father borrowed the money, paying interest thereon at 21%, but allegedly loaned the money to the decedent at an interest rate of 10%. The evidence strongly suggests that the money was obtained by appellant in such a manner as to avoid or deter all attempts to trace the funds to appellant in the event the illegal scheme was discovered prior to its consummation.

Also persuasive is the fact that appellant had known the decedent for only two weeks to one month when he loaned him $100,000.00 in cash. Appellant also testified that he didn't know any of the details concerning the investment the decedent would be making with the money.

Appellee testified that his brother had previously been involved in drug transactions in South America. He also testified without objection that he had received a letter from the State Department saying that the Bolivian authorities claimed that there was cocaine on the plane in Bolivia when it crashed.

We note that appellant never filed his deed of trust documents of record and instead left them to be discovered by appellee through conversations with third parties. Even appellant could not testify under oath as to what specific legitimate purpose the alleged $100,000.00 loan served. The entire structure of the alleged transaction between appellant and decedent would certainly entitle the probate judge to conclude that the "loan" was never to be discovered unless something happened to decedent as a result of his activities in Bolivia.

Title 21 U.S.C.A. § 812 lists cocaine among the schedule of controlled substances, the manufacture, distribution, dispensing, or possession of which with intent to manufacture, distribute, or dispense same, is prohibited pursuant to Title 21 U.S.C.A. § 841(a)(1).

■ Ordinarily, the Texas courts will not enforce an illegal contract, particularly where the contract involves the doing of an act prohibited by statutes intended for the protection of the public health and welfare, and it is the duty of the court at once to decline to give the contract any validity. *Peniche v. Aeromexico*, 580 S.W.2d 152 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ).

■ We find evidence in the record, both direct and circumstantial, showing an attempt and conspiracy on the part of the deceased to possess a controlled substance with intent to distribute and dispense such substance, which attempt and conspiracy were frustrated only by the death of Rodgers McCrary Harper in Bolivia. The trier of fact was entitled to conclude that the funds allegedly loaned to decedent, if any, were loaned in furtherance of this illegal scheme and the contract between appellant and decedent was for that reason illegal and unenforceable.

Appellant's fourth point of error is therefore overruled, and we hold that the evidence was sufficient to sustain the trial

court's rejection of appellant's claim against the estate of the decedent.

The judgment of the trial court is affirmed.