Dan GRAY, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 90-SC-639-DG.

Supreme Court of Kentucky.

Dec. 17, 1992.

Jim M. Alexander, Appellate Public Advocate, Lexington, for appellant.

Chris Gorman, Atty. Gen., Perry T. Ryan, Asst. Atty. Gen., Frankfort, for appellee.

COMBS, Justice.

Indicted for one count of sexual abuse in the first degree, appellant Gray was tried, found guilty, and sentenced to five years' imprisonment. The Court of Appeals affirmed, and we granted discretionary review.

Gray stood accused of abusing his eight-year-old niece. His initial trial ended with the jury unable to reach a verdict. On the day the second trial was to begin, the defense was informed that the Commonwealth intended to present the testimony of three other of Gray's nieces regarding acts of sexual abuse allegedly committed by Gray against them. This evidence had not been offered at the first trial; indeed, it appears that these events were reported to the Commonwealth only on the eve of the second trial. The defense moved for the exclusion of such testimony or, in the alternative, for a continuance in order to investigate the newly alleged incidents and to prepare an appropriate defense. The trial court ruled the evidence admissible and denied the motion for continuance. Those rulings constitute the principal issues on review.

The prosecuting witness testified that she had encountered Gray walking along the rural road between their respective homes; that he had said, "Wonder what's over there," and led her onto a path; that there he had pulled up her dress, pulled down her underclothing, and touched her sexually; that she had begun to cry, whereupon he had released her, told her not to tell anyone, and given her a soda pop.

The first of the three other nieces related a single incident which had allegedly occurred about seven years prior to the charged offense. According to her testimony, she had spent the night in the same house with Gray, his two children, and two other adult relatives. She, Gray, and his children had slept in the same room, she on a couch, he on the floor. While asleep, she had felt someone touch her between her legs. When she awoke, Gray was beside her, but his hand was not on her. Her failure to report the incident she attributed to fear.

The second witness testified that Gray had touched her "between my legs and my hind end," always when she was clothed, on twenty-five occasions over a period of time three-to-seven years prior to the charged offense. Only one incident was described with any particularity. The witness stated that she was in the kitchen of Gray's house washing dishes, apparently with Gray's daughter present, and "he just walked by and rubbed me between my legs." She testified that she had not disclosed the incidents to anyone until after the prosecuting witness' allegations were made.

The third non-complaining niece testified that Gray had touched her improperly fifteen-to-twenty times over a period of time six-to-twelve-years before the charged offense. She described four specific incidents:

[1] Me and my cousin, we were throwing the ball to each other, we were playing and I went beside the house and Dan was dusting rugs or something and told me to come there and I went over beside of him and he put his hand down between my legs.

.　　.　　.　　.　　.

Q. With your clothes on?

A. Yes.

[2] [T]hey was one time when Daddy wanted him to get him a load of sawdust and he borrowed Daddy's truck and Scottie, his boy, wanted me to go with them and when we got there they was a boy come on a motorcycle, I guess it was Scottie's cousin, and then they left to go get some water and while they was gone, I went up the road away from Dan and he told me to come there to see what was in the ashtray and I went there and he sent me up on the truck seat and he started to unbutton my pants and I started crying; he said I'm just gonna look and I said I'll tell Daddy on you, and I got out of the truck and I went away from him.

[3] I would go in the kitchen and get a drink or something and he would walk by me and have his hand down and when he walked by he would rub on my hind end.

[4] I stayed all night that night and he woke me up; he had his hand between my legs.

The witness said that she had not told anyone of these acts because she was afraid, Gray having threatened to kill her parents in the event.

After all three had testified, the court advised the jury to consider their testimony only for the purpose of corroboration.

▮ As summarized above, the various allegations here evince no striking similarity indicative of a modus operandi relevant to the charge. Only the first two incidents related by the third witness exhibit even a general correspondence to the offense being tried. But any probative worth which that resemblance might endue is diminished by the significant temporal remoteness of those events. For these reasons, and on the principles more fully explained in our opinion in *Billings v. Commonwealth*, Ky., 843 S.W.2d 890 (1992), rendered today, we hold that the testimony as to prior sexual acts in this case was more unfairly prejudicial than genuinely probative.

▮ Furthermore, the present case vividly demonstrates that the integrity of the trial is jeopardized when previously unknown witnesses appear at the eleventh hour with evidence of uncharged collateral crimes. Even in cases where evidence of prior uncharged criminal activity between the defendant and third persons is admissible, fundamental fairness dictates, and we hold, that the defendant is entitled to be informed of the names of the non-complaining witnesses and the nature of their allegations so far in advance of trial as to permit a reasonable time for investigation and preparation. *See* KRE 404(c).

The conviction is reversed, the sentence vacated, and the matter remanded to Clay Circuit Court for further proceedings consistent with this opinion.

STEPHENS, C.J., and LAMBERT and LEIBSON, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion in which REYNOLDS and SPAIN, JJ., join.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from the majority opinion because there has been no showing of any abuse of discretion by the trial judge in admitting evidence of Gray's prior acts of sexual abuse.

The majority assertion that the prejudicial effect of the testimony of the three witnesses who were earlier victims outweighs its probative value is a subjective substitution for the discretion usually afforded to the trial judge. There is no showing of any abuse of discretion by the trial judge. Ordinarily the trial judge is given wide latitude in the introduction of evidence. *Walker v. Commonwealth*, Ky., 476 S.W.2d 630 (1972). *O'Bryan v. Commonwealth*, Ky., 634 S.W.2d 153 (1982) is not properly applied here.

*Phillips v. Commonwealth*, Ky., 679 S.W.2d 235 (1984) held that where evidence of other crimes is admitted into evidence, a reviewing court must consider all of the evidence to determine if the accused has been unduly prejudiced.

The determination of whether an act is too remote should remain in the sound discretion of the trial judge and should not be disturbed by a reviewing court in the ab-

sence of a showing of an abuse of discretion.

Here, Gray committed very similar acts with the three witnesses who testified against him. The three witnesses and the victim in this case were all nieces of Gray.

In regard to the use of KRE 404(c), it should be noted that this case was tried in 1988 which was approximately four years prior to the adoption of the rule now cited.

REYNOLDS and SPAIN, JJ., join.