Timothy Taylor MITCHELL, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 94–SC–86–MR.

Supreme Court of Kentucky.

Aug. 24, 1995.

Rehearing Denied Nov. 22, 1995.

Thomas L. Conn, Fayette County Legal Aid, Inc., Lexington, KY, for appellant.

Chris Gorman, Attorney General, Laura Early, Assistant Attorney General, Criminal Appellate Division, Frankfort, KY, for appellee.

STUMBO, Justice.

Timothy Taylor Mitchell was convicted of two counts of first-degree rape, two counts of complicity to first-degree rape, three counts of first-degree sodomy, one count of complici-

ty to first-degree sodomy, one count of first-degree sexual abuse, two counts of kidnapping, one count of second-degree burglary, one count of third-degree burglary, and two counts of theft by unlawful taking over $100.00. He received 225 years. Mitchell appeals to this Court as a matter of right. Appellant raises three issues on appeal.

■ First, Appellant contends that the trial court denied him due process of law by allowing the introduction of scientific evidence of forensic DNA, an analysis which is not accepted within the general scientific community.

According to Appellant, based on the expert testimony introduced during the DNA hearing, a substantial controversy existed within the relevant scientific community regarding the forensic application of FBI and Kentucky State Police Lab DNA analyses. The trial court, after listening to the evidence, ultimately ruled that the forensic DNA evidence in the case was admissible.

■ Appellant asserts that admissibility of DNA evidence should be prohibited *per se.* The Commonwealth argues that DNA evidence should be admissible *per se.* We decline to adopt either a complete acceptance or complete bar to the admissibility of DNA evidence. This Court shall continue to approach this issue on a case-by-case basis.

As a result, the question before this Court is whether the trial court abused its discretion in allowing the forensic DNA evidence to be admitted. We find that the trial court did not abuse its discretion. This Court in *Harris v. Commonwealth,* Ky., 846 S.W.2d 678 (1992), upheld the use of the *Frye* test. *See, Frye v. United States,* 293 F. 1013 (D.C.Cir. 1923). This Court held that the party offering evidence of the scientific test has the burden of proving general acceptance in the particular field. In *Harris,* this Court reserved its views on DNA testing to a case-by-case basis. *See also,* Leslie Abramson, *Kentucky Practice: Criminal Practice and Procedure* § 27.83 (2d ed. 1987 & Supp.1994).

KRE 702, effective July 1, 1992, provides: If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

■ In 1993, the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals Inc.,* —— U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), analyzed Fed.R.Evid. 702 in relation to *Frye v. United States,* 293 F. 1013. Fed.R.Evid. 702 and KRE 702 contain the same language. The United States Supreme Court held that Fed.R.Evid. 702 supersedes the *Frye* standard. Accordingly, we adopt the standard of review set forth in *Daubert.* We overrule the portion of *Harris v. Commonwealth,* Ky., 846 S.W.2d 678 (1992), that conflicts with *Daubert v. Merrell Dow Pharmaceuticals Inc.* However, it must be *emphasized* that we retain as much of *Harris v. Commonwealth* that limits the determination of admissibility of DNA evidence to a case-by-case basis.

When "[f]aced with a proffer of expert scientific testimony," the trial judge must determine at [a preliminary hearing] "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert,* —— U.S. at ——, 113 S.Ct. at 2796, 125 L.Ed.2d at 482. According to the United States Supreme Court, the trial court must make a *preliminary assessment* of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology can be applied to the facts in issue. *Id.* "[I]n order to qualify as 'scientific knowledge,' an inference or assertion must be derived by the scientific method. Proposed testimony must be supported by appropriate validation—i.e., 'good grounds,' based on what is known. In short, the requirement that an expert's testimony pertain to 'scientific knowledge' establishes a standard of evidentiary reliability." *Id.* at ——, 113 S.Ct. at 2795, 125 L.Ed.2d at 481. In addition, "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Id.* at ——, 113 S.Ct. at 2796, 125 L.Ed.2d at 482. In applying Rule 702, "lower courts should look at whether the

scientific knowledge being presented has been tested, whether it has been subject to peer review and publication, what the evidence's known rate of error is, and whether the evidence has a particular degree of acceptance in the relevant community." Abramson at § 27.83 n. 2 (Supp.1994) (summarizing *Daubert*, —— U.S. at ——, 113 S.Ct. at 2796–99, 125 L.Ed.2d at 482–485).

In order to understand the factors better, it is important to examine *Daubert* in further detail. First, according to the United States Supreme Court, lower courts should examine whether the theory or technique can be tested. *Daubert*, —— U.S. at ——, 113 S.Ct. at 2796–97, 125 L.Ed.2d at 482–83. A second consideration is "whether the theory or technique has been subjected to peer review and publication." *Id.* at ——, 113 S.Ct. at 2797, 125 L.Ed.2d at 483. "[S]ubmission to the scrutiny of the scientific community is a component of 'good science,' in part because it increases the likelihood that substantive flaws in methodology will be detected." *Id.* The United States Supreme Court noted that publication alone does not necessarily correlate with reliability.

An additional consideration, "in the case of a particular scientific technique, the court ordinarily should consider the known or potential rate of error, . . . and the existence and maintenance of standards controlling the technique's operation." *Id.*

Finally, " 'general acceptance' can yet have a bearing on the inquiry." *Id.* "Widespread acceptance can be an important factor in ruling particular evidence admissible, and 'a known technique that has been able to attract only minimal support within the community[ ]' . . . may properly be viewed with skepticism." *Id.* at ——, 113 S.Ct. at 2797, 125 L.Ed.2d at 483 (quoting *United States v. Downing*, 753 F.2d 1224, 1238 (3d Cir.1985)).

■ To summarize, pursuant to KRE 702 and *Daubert*, expert scientific testimony must be proffered to a trial court. The trial court judge must conduct a preliminary hearing on the matter utilizing the standards set forth in *Daubert*. On appeal, the standard of review is whether in deciding the admissibility of the evidence the trial judge abused his or her discretion.

Upon a review of the record in the case at bar, we believe the trial court did not abuse its discretion. The trial court, after a preliminary hearing, examined the evidence pursuant to *Daubert*. The hearing was properly conducted. As a result, Appellant's conviction is affirmed on this issue.

■ Second, Appellant claims that the trial court erred by allowing the introduction into evidence of his illegally obtained confession.

According to Appellant, he was poorly educated and could not read well. He did not have the intelligence or educational background necessary to make an informed or intelligent decision to submit to interrogation by Sergeant Dan Gibbons. In addition, Appellant claims that he was under the influence of alcohol, he was crying, and his speech was slurred.

According to the Commonwealth, on May 11, 1992, Appellant was at the police station giving samples for the DNA tests. Sergeant Gibbons advised Appellant of his *Miranda* rights and Appellant stated that he wanted to talk to an attorney.

On June 12, 1992, police executed an arrest warrant on Appellant. He was arrested and advised of his *Miranda* rights by Sergeant Gibbons. Appellant stated to Sergeant Gibbons that he wanted to talk to him.

At the suppression hearing, the Commonwealth stated that the issue was whether or not Appellant initiated the conversation with Sergeant Gibbons. Defense counsel agreed, and further stated that another issue was the voluntariness of the confession. The trial judge reviewed the tape of Appellant's initiating conversation with Sergeant Gibbons. In addition, the record indicates that both the Commonwealth and defense counsel submitted supplemental briefs concerning this issue. Upon review of the filed authorities, the trial judge overruled the motion to suppress the confession. The trial judge found that there was a legal basis for the introduction of the statement.

In *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the United States Supreme Court held that one who had asserted his right to be represented by coun-

sel could not be interrogated further "unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id.* at 485, 101 S.Ct. at 1885. *See also, Stanford v. Commonwealth*, Ky., 734 S.W.2d 781 (1987).

■ This Court will reverse the trial court's decision only upon a showing of clear abuse of discretion. Upon a review of the record, we find that the trial court properly held that Appellant initiated the conversation and the confession was voluntarily given. The trial court did not abuse its discretion. The judgment of conviction on this issue is affirmed.

■ Finally, Appellant asserts that the trial court erred by failing to dismiss the one kidnapping charge pursuant to the exemption statute KRS 509.050. KRS 509.050 provides:

A person may not be convicted of unlawful imprisonment in the first degree, unlawful imprisonment in the second degree, or kidnapping when his criminal purpose is the commission of an offense defined outside this chapter and his interference with the victim's liberty occurs immediately with and incidental to the commission of that offense, unless the interference exceeds that which is ordinarily incident to commission of the offense which is the objective of his criminal purpose. The exemption provided by this section is not applicable to a charge of kidnapping that arises from an interference with another's liberty that occurs incidental to the commission of a criminal escape.

As stated above, the exemption applies only when the interference with the victim's liberty "occurs immediately with or incidental to the offense."

In this case, as the victim was jogging early one morning, two men grabbed her. Appellant allegedly picked her up by her arms and the smaller man picked her up by her legs. The two men carried her from the street to the backyard of a house. Appellant allegedly raped and sodomized her. According to Appellant, she was then "released." The Commonwealth states that "[a]fter the men raped and sodomized her, [the victim] heard noises like the men were looking for

the gun. [She] started running and so did the men. [She] ran to three houses banging on each door.... [she] was able to enter the home to safety...."

This Court addressed the exemption statute in *Stanford v. Commonwealth*, Ky., 793 S.W.2d 112 (1990):

In *Griffin v. Commonwealth*, Ky., 576 S.W.2d 514 (1978), this Court developed a three-part test to determine whether the kidnap exemption statute applies. First, the underlying criminal purpose must be the commission of a crime defined outside of KRS 509.... Second, for the exemption statute to apply, it must be determined whether the interference with the victim's liberty occurred immediately with or incidental to the commission of the underlying intended crime.... Finally, it must be determined whether the interference with the victim's liberty exceeds that which is ordinarily incident to the commission of the underlying crime.

*Stanford*, 793 S.W.2d at 116–117. The underlying criminal purpose, rape and sodomy, is defined outside of KRS 509. In addition, the removing of the victim from the street to the backyard occurred immediately with or incidental to the commission of the underlying intended crime. The question this Court faces is the determination of whether the interference with the victim's liberty exceeded that which is ordinarily incident to the commission of the underlying crime.

In *Spencer v. Commonwealth*, Ky., 554 S.W.2d 355 (1977), the KRS 509.050 exemption statute applied when the victim was raped by the defendant in the victim's car after he drove the car to a darker area of the parking lot. However, in *Spencer* the Commonwealth conceded that in light of KRS 509.050, the defendant's conviction for kidnapping, in addition to his conviction for rape and sodomy, was in error. The Court stated that "[p]ursuant to this concession, that conviction is hereby ordered reversed." *Id.* at 358. In the case at bar, no such concession has been made by the Commonwealth.

After a review of the record, this Court finds that the refusal to dismiss the kidnapping charge pursuant to KRS 509.050 was proper.

For the foregoing reasons, the conviction of Appellant is affirmed.

STEPHENS, C.J., and LAMBERT, and REYNOLDS, JJ., concur.

WINTERSHEIMER, J., concurs by separate opinion in which LEIBSON, J., joins.

FUQUA, J., not sitting.

WINTERSHEIMER, Justice, concurring.

I concur in the results achieved by the Majority Opinion, but I wish to state my reasons separately in regard to the approach that should be taken to DNA testing evidence.

The Majority Opinion emphasizes that it chooses to retain so much of *Harris v. Commonwealth,* Ky., 846 S.W.2d 678 (1992), that limits the determination of the admissibility of DNA evidence to a case-by-case basis. Although the majority claims to overrule the portion of *Harris* that conflicts with *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* —— U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), continued reliance on a case-by-case analysis is unwarranted. The Majority Opinion does little more than eliminate the necessity for following the standard from California found to be acceptable in *Harris.* It is far better to adopt *Daubert* than to risk inconsistent results by adhering to an undefined case-by-case approach.

The earlier *Frye* standard only requires that generally accepted scientific reasoning and methodology underlie scientific evidence and not that the results be generally accepted. *Daubert* is a reasonable interpretation and extension of the *Frye* test. The proffered DNA evidence meets either standard, and this case should be affirmed under *Frye* as well as *Daubert.* This Court implicitly recognized the *Daubert* standard in *Cecil v. Commonwealth,* Ky., 888 S.W.2d 669 (1995).

As I noted in my concurring opinion in *Harris, supra,* at least 38 states and several Federal jurisdictions have found that the scientific community has accepted DNA testing. There is no need to further burden the taxpayers by a superfluous inquiry when a valid standard currently exists. There is no need

for further hearings as to the admissibility of DNA evidence, except in cases where the challenge is that proper testing methods were not utilized, although the weight and credibility of such evidence can still be challenged by cross-examination and opposing expert testimony.

LEIBSON, J., joins in this concurring opinion.