Donald Edward ROBEY, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 94–SC–881–MR.

Supreme Court of Kentucky.

Feb. 27, 1997.

Rehearing Denied May 22, 1997.

Michael M. Losavio, Louisville, for Appellant.

A.B. Chandler, III, Attorney General, Hon. Perry T. Ryan, Assistant Attorney General, Frankfort, for Appellee.

JAMES LEVIN, Special Justice.

This appeal is from a judgment based on a jury verdict which convicted Donald Edward Robey of first-degree rape, first-degree burglary and as a first-degree persistent felony offender. He is sentenced to life imprisonment.

The victim testified that she knew Robey, a neighbor, and had invited him to spend the night on a couch in her apartment. However, Robey declined her offer, saying he would probably spend the night with a friend and then left the apartment. Later that evening, the victim awakened with a man in dark clothing and a gray ski mask at the side of her bed holding a red filet knife to her throat. The man, whose voice she recognized as Robey's, had her roll on her stomach and take off her pants. The man sat on her legs, put lubricant on her, and raped her. He then told her to count to forty and left. Testimony regarding a statement she made to her friend and to police was admitted over objection. Evidence was also introduced that semen found on her had a genetic match with Robey.

On December 21, 1978, Robey had pleaded guilty to raping another woman. That victim testified at the present trial that she awakened and found a man next to her wearing a ski mask and holding a knife to her throat. Her five-year-old daughter was asleep next to her. The man said, "Do you understand—it's you or your daughter." She said, "yes" and he took her to the next room where he laid her on her stomach, tied her up with her bathrobe and raped her. He then cut her bonds, told her to start counting, and left.

Robey testified about his relationship with the victim, that she invited him into her apartment, and that they had consensual relations that evening. The jury returned a verdict of guilty.

## I. PRIOR ACTS

Robey contends that the trial court erred in admitting evidence of acts committed by him sixteen years earlier, such as the rape of another woman and threats to a child. He claims these acts were irrelevant, remote, and highly prejudicial.

Prior to the trial, Robey filed a motion in limine to prohibit the Commonwealth from introducing the prior victim's testimony. During the trial, Robey again objected to the testimony. The record reveals that the trial court was extremely concerned about the prejudicial effect of this type of testimony. The court noted the problem of remoteness and reluctantly overruled Robey's objection, permitting the victim of the previous rape to testify about the events that led to Robey's conviction sixteen years earlier.

The Commonwealth contended that the evidence of the prior act was so similar in nature to the present act that it established a pattern or scheme and should be admitted since it relates to the issue of consent and identity. Thus, according to the Commonwealth, the similarity indicated a reasonable probability that the crimes were committed by the same person.

In *Billings v. Commonwealth*, Ky., 843 S.W.2d 890 (1992), we stated that evidence of criminal conduct other than that being tried is admissible only if probative of an issue independent of character or criminal disposi-

tion, and only if its probative value on the issue outweighs the unfair prejudice with respect to character. Inasmuch as Robey admitted he had sex with the prosecuting witness and she identified his voice, identity was not an issue. The issue of consent was essentially a swearing contest between the prosecuting witness and Robey.

We have held that evidence of independent sexual acts between the accused and persons other than the victim, if similar to the act charged and not too remote in time, are admissible to show intent, motive, or common plan. *Pendleton v. Commonwealth*, Ky., 685 S.W.2d 549 (1985); *Anastasi v. Commonwealth*, Ky., 754 S.W.2d 860 (1988). If the evidence only shows a tendency or disposition to commit a crime, it is not admissible. *Adcock v. Commonwealth*, Ky., 702 S.W.2d 440 (1986).

This Court has a continuing problem in deciding when evidence of prior acts become too remote to be admissible, and we have refused to adopt a bright line ruling concerning the temporal remoteness of other crimes. KRE 403 requires that the probative value of evidence, even if relevant, must substantially outweigh the danger of undue prejudice. The requirement that the prior act be "not too remote" is integral to determining the probative value of the evidence. Thus, an independent act too remote in time will fail the balancing test required by KRE 403.

The prosecution is not privileged to show unconnected and isolated unlawful conduct that had no bearing upon the crime under scrutiny. The evidence of a single sixteen-year-old conviction, although the crimes had similar aspects, was simply too remote. Any probative value "which [the] resemblance might endue is diminished by the significant temporal remoteness of those events." *Gray v. Commonwealth*, Ky., 843 S.W.2d 895, 897 (1992). The admission of the previous conviction "was more unfairly prejudicial than genuinely probative" and should not have been admitted. *Id.* Moreover, it is clear that the prejudice which resulted from the admission and detailed testimony of the remote unrelated crime was highly prejudicial and constituted reversible error, violating Robey's right to a fair trial for the specific crime for which he was accused. Any inclination the jury may have had to believe Robey's version of the events as consensual was destroyed when evidence of the prior rape conviction came in. KRE 403 provides for the exclusion of evidence which may be relevant but which is unduly prejudicial. The prior conviction here certainly satisfies the undue prejudice requirement.

This concept is mandated by the principle of fundamental fairness. As this Court has long held:

> Ultimate fairness mandates that an accused be tried only for the particular crime for which he is charged. An accused is entitled to be tried for one offense at a time, and evidence must be confined to that offense.... The rule is based on the fundamental demands of justice and fair play.

*O'Bryan v. Commonwealth*, Ky., 634 S.W.2d 153, 156 (1982).

## II. HEARSAY

Robey next argues it was error for the trial judge to allow prejudicial hearsay into evidence under the excited utterance exception. The victim testified that she immediately left her apartment after the incident, walked downstairs to a telephone booth and called a friend. The friend testified that the victim was hysterical and hyperventilating and that she had to calm the victim down in order to understand what she was trying to tell her. The friend advised the victim to immediately dial 911 and contact the police. The objection raised at trial was that the friend's testimony would bolster the testimony of the other witnesses. However, this issue was not preserved. Robey did not argue that the evidence was inadmissible on the grounds that the friend calmed her down before speaking with her. This court will not review an alleged error where the ground raised in the trial court differs from the issue raised on appeal. *Commonwealth v. Duke*, Ky., 750 S.W.2d 432 (1988).

In any event, and as this issue will arise on retrial, Robey's argument regarding this issue is without merit. The friend's

testimony fell within the excited utterance exception to the hearsay rule. KRE 803(2); *Souder v. Commonwealth,* Ky., 719 S.W.2d 730 (1986). First, the victim's statement was uttered under the stress of nervous excitement. Second, the incident was so recent that the victim was reacting to an event to which she had no opportunity to reflect upon or fabricate the statement. Third, the statement was trustworthy because the stress of her nervous statement stilled her reflective faculties and removed her control so that her utterance was a spontaneous and sincere response to the actual sensations and perceptions produced by the rape.

Although Robey complains that the victim's friend had calmed her down before she told her about the incident, the victim was still under the stress of nervous excitement. The tape of the 911 call reflects that even after she spoke with her friend, she was still hysterical and hardly able to speak. The trial court correctly permitted the friend to testify as to the statements that she made during the telephone conversation after the rape.

## III. DIRECTED VERDICT ON BURGLARY CHARGE

■ Robey contends that he was entitled to a directed verdict of acquittal on the charge of burglary in the first degree because he had permission to be inside the apartment. The evidence presented at trial was that the victim gave Robey permission to come inside her apartment to sleep on the couch. Robey declined and said he would probably spend the night with a friend. However, the victim placed a pillow and blanket on the couch for Robey. She left the door to her apartment unlocked so he could let himself in should he decide to spend the night there. She testified that Robey, whom she identified by his voice, entered but made no effort to sleep on the couch. Instead, he entered her bedroom and forcibly raped her. Robey testified he had permission to enter her apartment and that the sex was consensual.

The trial court, noting the official commentary to KRS 511.020 which provides that "any person who enters property under privi-

lege may still commit an offense of burglary if he remains on that property beyond the termination of his privilege," refused to grant Robey a directed verdict on the burglary charge.

The issue presented is whether Robey can be convicted of burglary in the first degree, in addition to the substantive crime for which he is being charged (rape), when he lawfully enters the victim's premises to commit a crime against the victim (rape).

The elements of first-degree burglary as set out in KRS 511.020(1) are as follows:

> A person is guilty of burglary in the first degree when, with the intent to commit a crime, he knowingly enters or remains unlawfully in a building, . . . .

KRS 511.090(1) states:

> A person "enters or remains unlawfully" in or upon premises when he is not privileged or licensed to do so.

Although the burglary statute indicates that a person who enters property under privilege may still commit the offense of burglary if he remains on the property beyond that privilege, the fact remains that a crime against property is an essential element of burglary.

In *Tribbett v. Commonwealth,* Ky., 561 S.W.2d 662, 664 (1978), the defendant was lawfully admitted to the premises and was involved in the death of the invitee. He subsequently remained on the premises to "make off" with the invitee's possessions. We held that inasmuch as the defendant was a mere licensee, that upon the death of the licensor, the license ceased, and the privilege to be upon the premises ceased. Therefore, when he *remained* to "make off" with the licensor's possessions, he remained unlawfully within the meaning of the burglary statute. Commentary to KRS 511.020. However, the essential element necessary for the burglary offense was not met at the death of the licensor. It was the failure to leave and the subsequent offense against the property that triggered the gravamen of the offense.

In *Hedges v. Commonwealth,* Ky., 937 S.W.2d 703 (1996), the defendant was under a domestic violence protective order, secured

by his estranged wife, forbidding him from disposing or damaging their property. After she permitted him to enter their apartment, he saw a man diving out the window, and proceeded to destroy their property. The wife was not injured. The defendant was convicted of burglary in the second degree. We reversed and ruled that the defendant was entitled to a directed verdict on the burglary charge. We held that misconduct by one rightfully on the premises should not convert that conduct into burglary, and that the mere violation of a DVO without intent to commit an independent crime, was impermissible to support a finding of burglary. We further stated that even if the defendant did enter the apartment with the intent to commit a crime, the burglary statute further requires that the defendant either knowingly entered or unlawfully remained in the apartment, and that he then committed an independent crime satisfying the elements of the burglary offense, after his permission to be on the property had been withdrawn. Since no evidence was cited to show that the defendant knew his permission to be in the apartment had been withdrawn at the time he destroyed the property, he was entitled to a directed verdict.

In the present case, the evidence introduced indicated that Robey entered the apartment with permission and thereafter entered the victim's bedroom and raped her. There was no evidence to indicate that his privilege to be in the apartment had been withdrawn prior to the time he committed the independent criminal act. Unlike the facts in *Tribbett*, Robey immediately left the premises and removed no property belonging to the victim. We must therefore conclude that the elements required to constitute the offense of burglary in the first degree were not met.

Robey's motion for a directed verdict on the burglary charge should have been sustained as it would have been unreasonable for the jury to find him guilty under the facts presented. This Court in *Hedges, supra,* restated the standard set forth in *Commonwealth v. Benham,* Ky. 816 S.W.2d 186 (1991), for a directed verdict in criminal cases:

[I]f under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then is the defendant entitled to a directed verdict of acquittal.

## IV. DNA EVIDENCE

■ Robey further contends that it was error to admit the DNA test results which proved he had sexual intercourse with the prosecuting witness. The trial judge determined that Stacy Warnecke was qualified to testify as an expert in accordance with KRE 702. She was permitted to extensively discuss the basis of her opinion. The admissibility of DNA evidence should be determined on a case-by-case basis. *Mitchell v. Commonwealth,* Ky., 908 S.W.2d 100 (1995). The DNA test did not prove that Robey raped the victim, but merely proved that semen present inside the victim's vagina was from Robey. Since Robey admitted to the police officers, on a recorded audiotape that was played for the jury, that he engaged in sexual intercourse with the victim but claimed it was consensual, and admitted during the trial about having sexual intercourse with the victim, there was no issue at the trial as to whether he engaged in sexual intercourse with her. Although there was no need for this testimony and it was cumulative, we do not believe that the admission of the DNA test was reversible error. *Stiles v. Commonwealth,* Ky., 570 S.W.2d 645 (1978).

The judgment is reversed and remanded for a new trial consistent with this opinion.

STEPHENS, C.J., and LAMBERT and STUMBO, JJ., concur.

WINTERSHEIMER, J., dissents in a separate opinion in which GRAVES, J., joins.

COOPER, J., dissents in a separate opinion.

JOHNSTONE, J., not sitting.

COOPER, Justice, dissenting.

I agree in all respects with the dissenting opinion of Justice Wintersheimer. I would simply add that even if Appellant had entered the victim's apartment with her permission, his "license ceased and the privilege

to be upon the premises lapsed" when he formed the intention to rape his host. *Tribbett v. Commonwealth*, Ky., 561 S.W.2d 662, 664 (1978); *see also McCarthy v. Commonwealth*, Ky., 867 S.W.2d 469, 471 (1993). I do not interpret *Tribbett, supra,* as narrowly as does the majority. The defendant in *Tribbett* committed the offense of burglary when he formed the intent to kill his host. It was at that moment that he remained on the property with the intent to commit a crime. KRS 511.020(1).

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from that part of the majority opinion which reverses the judgment of conviction. The majority has improperly substituted its view of the evidence for that of the trial judge. The challenged evidence was that of a signature crime nearly identical to the rape involved here; the trial judge properly refused to grant a directed verdict on the burglary charge and admission of the DNA test results was not reversible error.

The trial judge properly admitted evidence of a signature crime, nearly identical to the rape charge here: Prior to the trial, Robey filed a motion in limine to prohibit the Commonwealth from introducing the prior victim's testimony. During the trial, Robey again objected to the testimony, but the trial judge overruled his objection.

Evidence of other acts of sexual deviance offered to prove the existence of a common scheme or plan must be so similar to the crime on trial as to constitute a so-called signature crime. *Billings v. Commonwealth*, Ky., 843 S.W.2d 890 (1992); *Gray v. Commonwealth*, Ky., 843 S.W.2d 895 (1992).

In this case the similarities in the crimes are remarkable. Both victims were awakened from sleep. The assailant was wearing a ski mask and holding a knife to the throat of the victims, the victims were forced to lie on their stomach and raped from behind. The victims both recognized the accused and the accused was wearing a gray ski mask in one instance, and a blue gray ski mask in the other. The victims were told to count to a certain number before they got up, and the crimes occurred on Lucia Avenue and within one block of that street.

The evidence in this case was relevant because the only issue was whether Robey had raped the victim or whether she had consented. The evidence demonstrated that Robey, by committing a similar act at an earlier date, had forced a previous victim to have sexual intercourse. The evidence tended to refute Robey's claim that the victim in this case had consented and was therefore relevant and probative.

The evidence was not too remote in time. In *Diehl v. Commonwealth*, Ky., 673 S.W.2d 711 (1984), this Court discussed remoteness and held:

> The determination as to whether prior felony convictions are too remote in time to be used to impeach a witness' testimony rests within the sound discretion of the trial court. We have previously upheld rulings allowing convictions dating from ten to fifteen years before trial to be used for impeachment purposes.

Here the trial judge found that the two crimes were so similar in nature that even if there was a span of 16 years between the two, that they should be allowed into evidence. Robey's prior conviction was not too remote to be admissible, and there was no abuse of discretion by the trial judge. In determining the admissibility of the evidence, the trial judge properly considered the relevance and balanced the probative value against its prejudicial effect.

The trial judge properly refused to grant a directed verdict on the burglary charge. The evidence presented at trial was that the victim gave Robey the opportunity to come inside the apartment to sleep on the couch. However, Robey declined and said that he would probably spend the night with a friend. The victim placed a pillow and blanket on the couch for Robey. She left the door to the apartment unlocked so Robey could let himself in, should he decide to spend the night there. The victim did not give Robey permission to enter her bedroom or come inside the residence, concealing his identity with a mask, and rape her.

KRS 511.020 states:

(1) A person is guilty of burglary in the first degree when, with the intent to commit a crime, he knowingly enters or remains unlawfully in a building, and when in effecting entry or while in the building or in the immediate flight therefrom, he or another participant in the crime:

    (a) Is armed with explosives or a deadly weapon; or

    (b) Causes physical injury to any person who is not a participant in the crime; or

    (c) Uses or threatens the use of a dangerous instrument against any person who is not a participant in the crime.

When Robey entered the victim's apartment, he made no effort to sleep on the sofa, which was an element of the limited permission given by the victim. Instead, he wore a disguise and then forcibly raped the victim at knife point. Thus, Robey unlawfully entered the bedroom and remained unlawfully in the victim's apartment. The trial judge properly denied the motion for a directed verdict on the burglary charge.

It was not error to admit the DNA test results which proved that Robey had had sexual intercourse with the victim. The trial judge determined, without objection, that Warnecke was qualified to testify as an expert and Warnecke extensively discussed the basis of her opinion. Admissibility of DNA evidence is determined on a case-by-case basis. *Mitchell v. Commonwealth,* Ky., 908 S.W.2d 100 (1995). On appeal, the standard of review is whether in deciding the admissibility of the evidence, the trial judge abused his discretion. *Mitchell v. Commonwealth, supra.* Upon a careful review of the entire record, the trial judge did not abuse his discretion.

I would affirm the conviction in all respects.

GRAVES, J. joins in this dissent.