RENDERED:  DECEMBER 17, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1532-MR

ESTATE OF CLARENCE H.
THOMAS, JR. AND ADRIENNE
MOORE, AS ADMINISTRATRIX OF
THE ESTATE OF CLARENCE H.
THOMAS, JR.                                                          APPELLANTS


                          APPEAL FROM FAYETTE CIRCUIT COURT
v.                   HONORABLE LUCY ANNE VANMETER, JUDGE
                              ACTION NO. 15-CI-04673


KENTUCKY ONE HEALTH
PARTNERS, LLC; JESSE SABIITI,[1]
M.D.; KENTUCKY ONE HEALTH,
INC.; AND SAINT JOSEPH
HEALTHCARE, INC., DBA SAINT
JOSEPH HEALTH SYSTEM, INC.
AKA SAINT JOSEPH HOSPITAL                                          APPELLEES


                                  OPINION
                                 AFFIRMING

                              ** ** ** ** **

BEFORE:  DIXON, McNEILL, AND K. THOMPSON, JUDGES.

---

[1]  The notice of appeal contained a misspelling of Appellee's surname.  We have opted to utilize the correct spelling.

DIXON, JUDGE: Appellants (the Estate) appeal various orders of the Fayette Circuit Court granting Appellees' motions for summary judgment, denying the applicability of *res ipsa loquitur*, excluding the Estate's expert's opinion, and rulings on motions *in limine*. After a careful review of the briefs, record, and law, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

Clarence Thomas, Jr., presented to the emergency room at Saint Joseph Hospital on January 6, 2015. He was evaluated by Dr. Sabiiti in the early hours of January 7, 2015, and was ultimately admitted for ongoing care and observation. During Thomas's admission, he developed a pressure wound near his coccyx; no infection was noted. Thomas was then discharged on January 23, 2015.

At this time, Thomas's care was transferred to Cardinal Hill Hospital where he was to undergo two to three weeks of physical therapy. However, Thomas left against medical advice on January 26, 2015, only three days into his treatment regimen. Thereafter, Thomas received services from Cardinal Hill Home Care from January 27, 2015, to March 4, 2015. Reports from his skilled nurses indicate that Thomas was noncompliant with wound care during this time. Thomas was re-admitted to Saint Joseph Hospital on March 4, 2015, for knee surgery, but the procedure was delayed due to an infection in both the coccyx wound and in a pressure wound that had developed on his knee.

Thereafter, Thomas was in and out of multiple medical facilities, including Saint Joseph Hospital, Select Services Hospital, Brookdale Richmond Place, and the University of Kentucky Hospital (UK), for various health issues, including the infected coccyx wound, a hip injury resulting from a fall, sepsis, and an infection in his knee. Thomas was admitted to UK a final time on October 16, 2015, and subsequently died there on November 30, 2015. The death certificate cited cardiorespiratory failure as the cause of death.

On December 30, 2015, the Estate filed its complaint asserting claims of negligence, gross negligence, wrongful death, loss of love and affection,[2] and corporate liability. Appellees moved for summary judgment arguing the Estate had failed to timely designate an expert. The Estate objected arguing no expert was required under the doctrine of *res ipsa loquitur*. In an order entered March 7, 2018, the court determined that the doctrine was not applicable but, in lieu of granting summary judgment, afforded the Estate an extension of time to disclose an expert.

The Estate then retained Dr. Jackson who was deposed. At deposition, Dr. Jackson opined that the Appellees did not meet the applicable standard of care where they failed to: (1) turn Thomas as frequently as necessary, (2) provide sufficient skin protection, (3) provide a special mattress, and (4)

---

[2] This claim was dismissed by order entered March 13, 2017, and is not at issue in this appeal.

manage his protein levels. Dr. Jackson stated that he did not know how frequently Thomas was turned, what skin protection was provided, what type of mattress was used, or what Thomas's protein levels were, but opined the Appellees' actions were clearly insufficient because a wound developed. By way of explanation, Dr. Jackson asserted he did not need to know these details because skin breakdown is always preventable and, accordingly, any skin breakdown is the product of negligence. Dr. Jackson also could not specifically identify who failed to provide the necessary care other than to say Dr. Sabiiti failed to order a skin integrity plan.

On the issue of causation, Dr. Jackson acknowledged that Thomas's wound was not infected at the time he was discharged from Saint Joseph Hospital. However, based solely on his experience as the medical director of a nursing home for 20 years, where he dealt with wound care and bedsores, Dr. Jackson opined the wound became infected at some point before March 4, 2015, and the infection migrated to Thomas's knee. Ultimately, Dr. Jackson believes the skin infection led to other recurrent infections which entered Thomas's bloodstream causing sepsis and contributing to his death. Dr. Jackson acknowledged that Thomas had multiple health problems, including abscesses in the brain and lung, eye problems requiring retinal surgery, a seizure disorder, pneumonia, diabetes, hypertension, foot drop–a neuropathy–and achalasia. Dr. Jackson also conceded that he did not review Thomas's medical records from UK for his October through November

2015 admission (where Thomas died), the Cardinal Hill Home Care notes from January to March 2015 (the time Dr. Jackson asserts the wound became infected), Thomas's primary care records, or Saint Joseph Hospital's policy and procedures.

Regarding claimed medical expenses, Dr. Jackson opined that the treatment Thomas received after January 23, 2015, was reasonable and necessary. When asked how Dr. Jackson could reach this conclusion given his admission that he did not review all of Thomas's medical records, Dr. Jackson asserted Thomas needed treatment but conceded he had not seen the numbers and was speculating. Dr. Jackson also acknowledged that he was not an expert on hospital service charges and that he did not have an opinion as to the costs and expenses of the services provided to Thomas because he did not know the specifics.

After deposition, Appellees moved to exclude Dr. Jackson's testimony pursuant to KRE[3] 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and for partial summary judgment on the punitive damages and vicarious liability claims. After hearing arguments, the court found that Dr. Jackson's testimony was not based upon sufficient data and facts where he did not review all pertinent medical records and, regarding the standard of care, where he could not identify specific deviations or even what should have occurred. The court further found that Dr. Jackson's

---

[3] Kentucky Rules of Evidence.

testimony was not the product of reliable principles and methods where his standard of care opinion was inconsistent with Kentucky law and his causation opinion was based solely on a bald assertion that he had seen similar cases. As to partial summary judgment, the court concluded the Estate had failed to demonstrate any affirmative evidence to support punitive damages or vicarious liability.

Accordingly, by an order entered October 14, 2020, the court excluded Dr. Jackson's testimony and granted Appellees summary judgment on the punitive and vicarious liability claims. On October 28, 2020, the court entered an order resolving Appellees' various motions *in limine*. Finally, on November 18, 2020, the court entered an order granting summary judgment to the Appellees on all remaining claims. This appeal followed. Additional facts will be introduced as they become relevant.

## ANALYSIS

The Estate claims that the court erred in concluding that the doctrine of *res ispa loquitur* is not applicable and necessitating that the Estate obtain an expert. Before we reach the merits, we will address the Estate's claim that the court did not comply with the mandates of *Baptist Healthcare System, Inc. v. Miller*, 177 S.W.3d 676 (Ky. 2005), and conduct a hearing. We disagree with the Estate that *Miller* necessitates a hearing. *Miller* held that it would be

"inappropriate to use a CR[4] 56 summary judgment to resolve what is essentially a procedural dispute as to the need for an expert. In such disputes, it is within the trial court's discretion to impose sanctions for failure to comply rather than to grant summary judgment[.]" *Id.* at 681-82. The court's order granting the Estate additional time to retain an expert after determining *res ipsa loquitur* did not apply is consistent with *Miller*. Therefore, the Estate's claim of error is without merit. We now will consider the merits of the court's decision that *res ipsa loquitur* does not apply.

Negligence may not be inferred merely from a poor result. *Meador v. Arnold*, 264 Ky. 378, 94 S.W.2d 626, 631 (1936). Generally, the plaintiff in a medical negligence case has the burden to establish by expert testimony that the physician breached the standard of care and that the breach was the proximate cause of the plaintiff's injury. *Ashland Hosp. Corp. v. Lewis*, 581 S.W.3d 572 (Ky. 2019). However, the doctrine of *res ipsa loquitur* serves as a limited exception where "'any layman is competent to pass judgment and conclude from common experience that such things do not happen if there has been proper skill and care[.]'" *Perkins v. Hausladen*, 828 S.W.2d 652, 654-55 (Ky. 1992) (quoting in agreement PROSSER AND KEETON ON TORTS, § 39 (5th ed. 1984)).

---

[4]  Kentucky Rules of Civil Procedure.

"Whether expert testimony is required in a given case is squarely within the trial court's discretion." *Green v. Owensboro Med. Health Sys., Inc.*, 231 S.W.3d 781, 783 (Ky. App. 2007) (citing *Keene v. Commonwealth*, 516 S.W.2d 852, 855 (Ky. 1974)). Accordingly, we review for an abuse of discretion. "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

The Estate argues this is a case where a layperson is competent to determine negligence based on the medical records alone. The Estate asserts that the medical records demonstrate that Thomas developed a coccyx wound during his admission, this wound became infected in the 39 days following his discharge from Appellees' care, the infection spread throughout Thomas's body, and he was still suffering from an infection when he was admitted to the hospital the final time in October 2015.

We note that the Estate provided no citation to the appellate record to support its assertions regarding the contents of the medical records. Regardless, we agree with the court that the processes involved in the development of a wound during a hospital admission–especially considering Thomas's multiple medical conditions–and the onset and spread of infection are not within the general knowledge of a layperson. *See Nalley v. Banis*, 240 S.W.3d 658 (Ky. App. 2007)

(affirming the inapplicability of *res ipsa loquitur* where layperson could not have determined whether the infection the patient developed after two surgical procedures was caused by defendants' negligence) and *Harmon v. Rust*, 420 S.W.2d 563, 564 (Ky. 1967) (affirming summary judgment where expert witness was not retained and layperson was without sufficient general knowledge to recognize that infection after skin transplant and treatment of severe burns is the result of negligence). Accordingly, the court did not abuse its discretion in determining that the doctrine did not apply.

The Estate's next claim is that the court erred in excluding Dr. Jackson's testimony. The standard of review for evidentiary issues is abuse of discretion. *Clark v. Commonwealth*, 223 S.W.3d 90, 95 (Ky. 2007). The trial court's factual findings "shall not be set aside unless clearly erroneous[.]" CR 52.01; *see also A & A Mechanical, Inc., v. Thermal Equip. Sales, Inc.*, 998 S.W.2d 505, 509 (Ky. App. 1999). A finding is not clearly erroneous if it is supported by substantial evidence. *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998).

As an initial point, the Estate posits that, where there is no assertion Dr. Jackson does not qualify as an expert, it is *per se* erroneous for the court to preclude a jury from hearing his testimony. We disagree. The law has long recognized that the trial judge acts as a gatekeeper regarding the admission of

expert testimony, a role which extends beyond merely ensuring a witness's qualifications. In *Mitchell v. Commonwealth*, 908 S.W.2d 100 (Ky. 1995), *overruled on other grounds by Fugate v. Commonwealth*, 993 S.W.2d 931 (Ky. 1999), the Supreme Court of Kentucky adopted the standard of review articulated in *Daubert*, 509 U.S. 579, 113 S. Ct. 2786, which requires a court to determine whether the testimony is both relevant and reliable.

> Likewise, KRE 702 provides:
>
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, **may** testify thereto in the form of an opinion or otherwise, if:
>
> (1) The testimony is based upon sufficient facts or data;
>
> (2) The testimony is the product of reliable principles and methods; and
>
> (3) The witness has applied the principles and methods reliably to the facts of the case.

(Emphasis added.)

As the law clearly obligates the court to consider the substance of the testimony itself, the Estate's claim is without merit.

The Estate challenges the court's findings that Dr. Jackson's testimony was not based upon sufficient facts or data. Specifically, the Estate argues the court erred in accepting without evidence that the medical records from

the relevant admission were 2,374 pages–instead of the 150 pages asserted by the Estate and which Dr. Jackson reviewed–and that specific skin integrity records exist which Dr. Jackson did not review. On these matters, we must agree. The only support for these findings in the record comes from the arguments of the parties, which are not evidence. *Chipman v. Commonwealth*, 313 S.W.3d 95, 99-101 (Ky. 2010).

However, the court's decision rested on more than these findings and was supported by the record where Dr. Jackson admitted he did not review relevant portions of the medical records. Further, Dr. Jackson admitted he did not know critical information regarding Appellees' care of Thomas. While the Estate argues this is because Thomas received no skin integrity care and asserts the medical record contains no relevant information, this is not supported by the record. Dr. Jackson merely testified he did not know, not that the information was not in the records or that no protective actions were taken by the Appellees.

Relatedly, the court determined that Dr. Jackson's testimony regarding breach of standard of care was not the product of reliable principles and methods where Dr. Jackson made it clear that he did not need to know the specifics of Appellees' actions because, in his view, skin integrity issues are always preventable, and negligence is presumed if a wound occurs. As the court noted, this is not consistent with Kentucky law which precludes indulging in a

presumption of negligence based on the mere evidence of a bad result. *Andrew v. Begley*, 203 S.W.3d 165, 170-71 (Ky. App. 2006) (citing *Meador*, 94 S.W.2d at 631). This finding is not clearly erroneous.

Likewise, the court's finding that Dr. Jackson's causation opinion was not the product of reliable principles and methods is supported by the record. It is well settled that the reasoning or methodology underlying an expert's testimony must be scientifically valid and capable of being properly applied to the facts. *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000) (citing *Daubert*, 509 U.S. at 592, 113 S. Ct. at 2796; KRE 702). Opinions based on nothing more than an expert's assertion of fact do not meet this standard. *Id.*

Herein, Dr. Jackson's opinion regarding causation (that an infection started in the coccyx wound before migrating to the knee and then causing recurrent infections and contributing to Thomas's death) was only supported by his bold assertion that he has seen similar cases. Dr. Jackson provided no details regarding these cases or even identified how they were similar. Further, when pressed, Dr. Jackson was not able to articulate a specific basis supporting his opinion, such as infection cultures, nor did he attempt to articulate any general medical basis for his opinion, such as known properties of infections.

Because the court's findings (that Dr. Jackson's testimony was not based upon sufficient facts or data and that it was not the product of reliable

principles and methods) are supported by the record, the court did not abuse its discretion in excluding the testimony.

Finally, the Estate contends that the court erred in granting summary judgment. Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56.03. "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). However, the party opposing the motion cannot merely rely upon his own claims or arguments but must demonstrate significant evidence to prevail. *Wymer v. JH Props., Inc.*, 50 S.W.3d 195, 199 (Ky. 2001). We review *de novo*. *Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 705 (Ky. App. 2004).

Herein, the Estate argues that it established a genuine issue of material fact through Dr. Jackson's testimony and regarding its vicarious liability claim. It further argues the court made a factual error regarding the applicability of an admission consent form. Having affirmed the court's decision to exclude Dr. Jackson's testimony, as well as its decision that *res ipsa loquitur* does not apply, it necessarily follows that neither can serve as a basis to preclude summary judgment. Additionally, as vicarious liability requires a negligent agent, it further follows that summary judgment on the negligence and wrongful death claims

-13-

necessitates summary judgment as to vicarious liability premised on the same facts. *See Cohen v. Alliant Enters., Inc.*, 60 S.W.3d 536 (Ky. 2001). Thus, this claim also fails.

As we have affirmed the court's grant of summary judgment, we need not address the Estate's claims regarding the court's rulings on the motions *in limine*. Further, as we have determined that the court did not err in its rulings, the Estate's claim of cumulative error is also without merit.

## CONCLUSION

Therefore, and for the foregoing reasons, the Fayette Circuit Court's orders granting summary judgment, denying the applicability of *res ipsa loquitur*, and excluding the Estate's expert are affirmed.

McNEILL, JUDGE, CONCURS.

THOMPSON, K., JUDGE, CONCURS IN RESULT ONLY AND FILES SEPARATE OPINION.

THOMPSON, K., JUDGE, CONCURRING IN RESULT: I concur with the well-written Opinion by the majority, however differ as to my analysis to achieve the same result.

Mr. Thomas presented not only a complex prior medical history but also multiple comorbidities concurrent with his hospitalization. He also discharged himself against medical advice from the rehabilitation facility after only three days.

There is no medical evidence in the record of infection at the site of the bedsore upon either his discharge from the hospital or from the rehabilitation facility.

But for Mr. Thomas's own resistance to treatment, his bedsore could have been treated and the potential for any further injury or resultant infection ameliorated. Further, the developed facts of Mr. Thomas's case exhibit no causal connection between the occurrence of the bedsore and either his later infection or his death within the realm of reasonable medical probability.

However, and to be clear, with a different factual situation, I believe the incidence of bedsores, and any further injuries resultant therefrom, could warrant the application of *res ipsa loquitur*.

And for those reasons, I concur with the result of the majority.

BRIEF FOR APPELLANTS:

Gerry L. Harris
Lexington, Kentucky

BRIEF FOR APPELLEES
KENTUCKYONE HEALTH
PARTNERS, LLC; KENTUCKYONE
HEALTH, INC.; AND SAINT
JOSEPH HEALTHCARE, INC.
D/B/A SAINT JOSEPH HEALTH
SYSTEM INC. A/K/A SAINT
JOSEPH HOSPITAL:

Jeffery T. Barnett
Kimberly G. DeSimone
Lexington, Kentucky

BRIEF FOR APPELLEE JESSE
SABIITI, M.D.:

Clayton L. Robinson
Nick W. Edwards
Lexington, Kentucky