# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: AUGUST 14, 2025
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0132-MR

ROBERT GEARY                                   APPELLANT

V.                  ON APPEAL FROM MEADE CIRCUIT COURT
HONORABLE KENNETH H. GOFF, II, JUDGE
NO. 22-CR-00028

COMMONWEALTH OF KENTUCKY                    APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

A Meade Circuit Court jury convicted Robert Geary ("Geary") of two counts of promoting a sexual performance by a minor (under 16 years old) and one count of first-degree sexual abuse. The trial court followed the jury's recommendation and sentenced Geary to twenty-five years' imprisonment. He now appeals as a matter of right.[1]

On appeal, Geary raises four issues of trial error. First, Geary argues that the trial court erred in denying his motion for a directed verdict on each count of promoting a sexual performance by a minor (under 16 years old).

---

[1] Ky. Const. § 110(2)(b) ("Appeals from a judgment of the Circuit Court imposing a sentence of … imprisonment for twenty years or more shall be taken directly to the Supreme Court.").

Second, Geary argues that the trial court erred in admitting his prior misdemeanor conviction of second-degree sexual abuse. Third, Geary argues that the trial court erred in refusing to allow him to cross-examine the victim about her prior false allegations of abuse; and fourth, that the trial court erred in excluding a lesser included instruction. Each claim of error was properly preserved. Additionally, Geary argues that there was cumulative error. Finding no error, we affirm.

## I.   BACKGROUND

In January 2022, Geary and his girlfriend, Samantha, lived with his mother, Barbara Geary ("Barbara") in her one-bedroom apartment in Brandenburg, Kentucky, for about four months. Both Geary and Samantha had children and shared custody with others. Occasionally, they had custody of their children on the same weekend. January 14 through 16, 2022, was one such weekend. Samantha and Geary each arranged for one of their children to stay elsewhere that weekend. Two girls, A.L., Samantha's thirteen-year-old daughter (the victim), and K.G., Geary's minor daughter, spent the weekend with them. The blended family group went to Lumber Jack's[2] on Friday evening to eat and watch Geary play cornhole. As the evening grew late, Samantha left Geary at Lumber Jack's and took the girls back to the apartment. It is unclear exactly what time Geary returned to the apartment.

---

[2] Lumber Jack's is a local eatery and axe-throwing venue that has since permanently closed.

For context, the apartment's bedroom featured a set of bunk beds along one wall and a queen-size bed along the opposite wall. A nightstand separated the two beds. A.L. and K.G. slept together in the bottom bunk. Samantha and Geary shared the queen-size bed. Geary's mother slept on the couch in the living room, just a few feet away.

A.L. said that she woke up to Geary pulling her shirt up, touching her breast, and taking photographs of her. He then placed her hand around his penis and moved it around. He also put his hands down the front of her pajamas, began rubbing her vagina, and then put his fingers inside of her. She pretended to be asleep.

A.L. revealed the abuse to her best friend, a child with whom she often stayed, and asked her not to tell anyone. However, the friend informed her mother, who notified school personnel. On January 21, an investigation ensued, leading detectives to Geary's home. Geary willingly provided investigators with his cellphone and the passcode. Investigators discovered photographs on Geary's phone showing A.L. lying on the bottom bunk bed with her shirt pulled up, exposing her breasts. K.G. was lying beside her, facing away from A.L. The pictures depicted A.L. wearing the clothing she and others described her wearing that night—a grey t-shirt and plaid pajama pants. The phone was examined by law enforcement and forensic experts who determined that the photos on the phone were not taken with Geary's phone. Instead, they

3

were thumbnails[3] and lacked the metadata to provide more information about the pictures.

On March 18, 2022, a Meade County Grand Jury indicted Geary on the charges of first-degree unlawful transaction with a minor (under 16 years old) and first-degree sexual abuse. A superseding indictment, filed on June 12, 2023, charged Geary with two counts of promoting a minor (under 16 years old) in a sexual performance, first-degree unlawful transaction with a minor (under 16 years old), first-degree sexual abuse, and two counts of possession or viewing of matter portraying a sexual performance of a minor.

At trial, the Commonwealth called A.L., the lead investigator, and an expert witness. Geary called Samantha, K.G., Barbara, and another expert. He also provided testimony. Geary, Samantha, K.G., and Barbara emphatically denied A.L.'s abuse allegations. They testified that K.G.'s glucose monitor sounded several times during the night in question, and each time, they all woke up to attend to K.G. A.L. also recalled K.G.'s glucose monitor sounding but stated it went off two or three times that night before the alleged abuse. However, she did not recall the specific times.

The events of the following morning are also disputed. A.L. testified she woke up the next day and immediately called her dad to pick her up. In contrast, everyone else in the apartment testified that Geary, Samantha, and the girls woke up, showered, got dressed, and traveled for two and a half hours

___

[3] A thumbnail is a miniature computer graphic, sometimes hyperlinked to a full-size version.

to Williamsburg for a cornhole tournament featuring Geary, noting that A.L. was cheerful and singing. Samantha proposed that they stop to pick up Zach, A.L.'s boyfriend, anticipating that the girls would grow bored merely watching the tournament. A.L. testified that the trip to Williamsburg occurred the weekend before.

Both parties presented expert testimony. The Commonwealth's expert testified that the two images she found on Geary's phone had a creation date of January 16, 2022, and an access date of January 19, 2022, and that the device was restored from a backup on January 19, 2022. Both experts stated this was consistent with turning in an old phone and restoring the backup on a new one. Geary's expert also offered other scenarios.

Samantha and Geary testified that on January 19, he traded in his phone and got a new one. Geary denied taking or seeing the photos on his new phone and testified that the police did not ask him for his old phone. Samantha also testified that A.L. was a pathological liar and often lied to get what she wanted. Samantha believed that A.L. was upset after learning on January 20 that she and Geary were getting their own place and A.L. would be spending less time at her best friend's house.

A jury found Geary guilty of first-degree sexual abuse and two counts of promoting a sexual performance by a minor (under 16 years old).[4] The parties agreed to dismiss both counts of possession of matter portraying a sexual

---

[4] The jury found Geary not guilty of first-degree unlawful transaction with a minor (under 16 years old).

5

performance by a minor. On March 11, 2024, the trial court sentenced Geary to twenty-five years' imprisonment. This appeal followed. Additional facts are included below as necessary.

## II. ANALYSIS

**A.**   **The trial court did not abuse its discretion in denying Geary's motion for a directed verdict.**

Geary asserts that the trial court erred by not granting his motion for a directed verdict on the two counts of promoting a sexual performance by a minor (under 16 years old). Geary preserved this issue by filing a motion for a directed verdict at the close of the Commonwealth's case and renewing said motion at the end of all proof. We disagree that the trial court erred.

In considering a defendant's motion for a directed verdict, the trial court must consider the evidence, presume the Commonwealth's proof is true, draw all reasonable inferences in favor of the Commonwealth, and leave questions of weight and credibility to the jury. *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). As such, on appeal, we must determine whether "it would be clearly unreasonable for the jury to find guilt." *Id.* (citing *Commonwealth v. Sawhill*, 660 S.W.2d 3, 5 (Ky. 1983)).

After all evidence was presented, Geary moved for a directed verdict, arguing that A.L.'s testimony was inconsistent and that the Commonwealth's evidence was insufficient to submit the case to the jury. He further contended that the statute required the minor to perform an act at the adult's request, which had to be conducted by the minor and not the perpetrator. Geary maintained that a photograph is not enough. We disagree.

6

A person promotes the sexual performance by a minor when, "knowing the character and content thereof, he . . . produces, directs, or promotes any performance which includes sexual conduct by a minor." KRS[5] 531.320(1). Under KRS 531.300(2), a "performance" includes a photograph. And "sexual conduct by a minor" includes "[t]he exposure, in an obscene manner, of . . . the female breast." KRS 531.300(4)(d). Content is obscene not because a child is doing something obscene but because, to the audience, "the predominant appeal of the matter taken as a whole is to a prurient interest in sexual conduct involving minors[.]" KRS 531.300(1). We've noted previously: "[C]learly, common sense dictates that there can be an audience of one." *Clark v. Commonwealth*, 267 S.W.3d 668, 676 (Ky. 2008) (quoting *Woodard v. Commonwealth*, 219 S.W.3d 723, 727 (Ky. 2007) overruled on other grounds by *Commonwealth v. Prater*, 324 S.W.3d 393 (Ky. 2010) (citation omitted)).

Additionally, Geary argues that the photographs were not taken with his phone. Evidence presented at trial revealed that Geary had traded in his phone for a new one between the time of the abuse and when the police collected his cellphone. Even though Geary did not take the photographs with the phone he gave to the police, the experts testified that it is plausible to believe or infer that he took them on his old phone and transferred them to the new phone when it was set up. *Moore v. Commonwealth*, 462 S.W.3d 378, 388 (Ky. 2015)("A jury verdict may properly be based upon reasonable inferences drawn from the

---

[5] Kentucky Revised Statutes.

7

evidence."). A reasonable jury could conclude that Geary took or produced the obscene photographs of A.L. for his prurient interest or sexual desire. Thus, the trial court did not err in denying Geary's motion for a directed verdict.

**B.    The trial court did not err in admitting Geary's misdemeanor conviction into evidence.**

Geary asserts that the trial court erred in allowing admission of irrelevant and prejudicial evidence of a 2009 misdemeanor conviction of sexual misconduct. In June 2023, after the superseding indictment, the Commonwealth gave notice under KRE[6] 404(c) of its intent to introduce said conviction, alleging that Geary engaged in similar illegal sexual acts with a minor.[7] The Commonwealth indicated that the evidence would be used to show motive, intent, plan, knowledge, modus operandi, or absence of mistake or accident. Geary objected and moved in *limine* to exclude it. Said motion was noticed for January 5, 2024, the day of the final prehearing conference.[8] That same day, Geary's attorney signed an agreed order allowing the Commonwealth to cross-examine Geary about the prior conviction.[9]

Throughout cross-examination, Geary continued to object to the Commonwealth's attempts to question him about the conviction, arguing that

---

[6] Kentucky Rules of Evidence.

[7] Geary pleaded guilty to the charges.

[8] It is unclear whether the trial court conducted a 404(b) analysis during the prehearing conference. A recording of said hearing is not included in the record.

[9] It is also unclear why counsel agreed to allow the Commonwealth to use the 2009 misdemeanor conviction after arguing against it. The original agreed order contained the phrase "use for impeachment purposes only." However, that phrase was struck through, and "prosecuting cross-examination" was handwritten and initialed by counsel for both parties.

it constituted improper cross-examination. The Commonwealth initially asked Geary if the incident with A.L. was a mistake. The trial court sustained Geary's objection. The Commonwealth then asked Geary specific questions regarding the facts that led to the 2009 conviction: did it happen at night, at his mother's house, while others were asleep, and was someone else in bed with the alleged victim? Geary answered each question in the affirmative.

On redirect examination, Geary explained the 2009 incident more specifically. He testified that he was 19 years old, and the alleged victim was 16; that they were "cousins," were in a relationship, and had sexual intercourse more than once. He said he was told to plead guilty to a misdemeanor because his record could be expunged. He was not recommended for sex offender treatment.[10]

On appeal, Geary concedes that the parties entered an agreed order regarding the admissibility of the misdemeanor conviction. However, he argues that the Commonwealth's cross-examination was inappropriate because he did not raise the issue on direct examination. He argues that the prior misdemeanor was not offered to prove a common scheme or plan. Rather, it was offered to show a modus operandi for the purpose of proving motive, intent, knowledge, and the absence of mistake or accident. He argues, however,

---

[10] A certified copy of the court record 09-M-0354 was filed in the record on January 5, 2024. Contained therein was the sex offender needs assessment. The evaluator concluded that "[t]he instant offense is clearly an episode of adolescent sexual expression between individuals functioning as peers and shows no elements of pathological predation on Mr. Geary's part."

9

that to prove the elements of a subsequent offense by the 2009 misdemeanor conviction, the facts surrounding the prior misconduct must be so "strikingly similar" to the charged offense as to create a reasonable probability that the acts were committed by the same person and/or accompanied by the same mental state. Absent this striking similarity, the misdemeanor conviction proves only a criminal disposition and is inadmissible.

To support this argument, Geary contends that the facts were not strikingly similar because he was 19 and the alleged victim was 16, and the fact that they engaged in sexual intercourse, which A.L. did not allege. A.L. alleged sexual contact. Geary additionally argues on appeal that any probative value was substantially outweighed by the danger of undue prejudice, citing KRE 403, and argued that the trial court abused its discretion in allowing the Commonwealth to introduce the 2009 conviction.

The Commonwealth asserts that Geary engaged in similar illegal sexual misconduct in 2009, and it introduced the evidence to demonstrate modus operandi and that proper cross-examination occurred. Furthermore, the Commonwealth contends that Geary waived this issue by signing the agreed order and cannot now claim error. We agree. In *Quisenberry v. Commonwealth*, 336 S.W.3d 19, 37 (Ky. 2011) (citation omitted), this Court held that "[A] party is estopped from asserting an invited error on appeal." *See also Gray v. Commonwealth*, 203 S.W.3d 679, 686 (Ky. 2006) (citation omitted) ("A defendant cannot complain on appeal of alleged errors invited or induced by himself[[.]").

10

"Trial courts must admit evidence under KRE 404(b) 'cautiously, with an eye towards eliminating evidence which is relevant only as proof of an accused's propensity to commit a certain type of crime.'" *Riggle v. Commonwealth*, 686 S.W.3d 105, 112 (Ky. 2023) (quoting *Bell v. Commonwealth*, 875 S.W.2d 882, 889 (Ky. 1994)). In determining admission under KRE 404(b), "the trial court must consider whether the evidence is relevant, probative of the prior bad act, and whether its potential prejudice substantially outweighs any probative value." *Riggle*, 686 S.W.3d at 112. We review the trial court's evidentiary rulings for an abuse of discretion. *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 577 (Ky. 2000). "The test for abuse of discretion is whether the trial court's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

KRE 404(b) generally prohibits the introduction of "[e]vidence of other crimes . . . to prove the character of a person to show action in conformity therewith." However, the rule outlines two exceptions. First, other acts evidence is admissible if offered for "some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence or mistake or accident . . ." KRE 404(b)(1). Second, if the evidence of other act(s) is "so inextricably intertwined with other evidence essential to the case that the separation of the two could not be accomplished without serious adverse effect on the offering party," the evidence may be admitted. KRE 404(b)(2).

11

The Court must consider relevance, probative value, and prejudice to determine whether evidence of other bad acts is admissible under KRE 404(b). *Bell*, 875 S.W.2d at 889-91. Geary argues on appeal that cross-examination regarding the 2009 conviction was unduly prejudicial and that the trial court abused its discretion by allowing it.

First, the evidence of prior sexual misconduct was relevant under KRE 401. "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." KRE 401. Evidence of a prior incident of sexual misconduct with a minor at night, at his mother's house, while others were sleeping nearby, tends to make it more probable that, on the day in question, he committed a similar act. As such, the evidence was relevant. All relevant evidence is admissible under KRE 402.

Next, we consider whether the evidence was probative. "[E]vidence of other bad acts is sufficiently probative if the jury could reasonably infer that the prior bad acts occurred and the [Geary] committed such acts." *Howard v. Commonwealth*, 595 S.W.3d 462, 476 (Ky. 2020) (internal quotation marks omitted) (quoting *Parker v. Commonwealth*, 952 S.W.2d 209, 217 (Ky. 1997)). Geary testified and admitted that he committed the prior offense of sexual misconduct and offered the jury an explanation of why he pleaded guilty. Thus, the jury could reasonably infer that the prior bad act occurred.

Finally, we must weigh the evidence's prejudicial nature against its probative value. *Bell*, 875 S.W.2d at 889. Although relevant, evidence may be

12

excluded if the danger of undue prejudice substantially outweighs its probative value.  KRE 403. "A proper balancing under KRE 403 requires that a trial court consider three factors:  the probative worth of the evidence, the probability that the evidence will cause undue prejudice, and whether the harmful effects substantially outweigh the probative worth." *Yates v. Commonwealth*, 430 S.W.3d 883, 897 (Ky. 2014) (citing *Barnett v. Commonwealth*, 979 S.W.2d 98, 100 (Ky. 1998)).

The evidence of Geary's prior sexual misconduct conviction was undoubtedly prejudicial, particularly considering that it occurred well over a decade earlier. However, we must determine whether that prejudice was "unnecessary and unreasonable." *Price v. Commonwealth*, 31 S.W.3d 885, 888 (Ky. 2000) (citing *Romans v. Commonwealth*, 547 S.W.2d 128, 131 (Ky. 1977)). The Commonwealth produced three witnesses at trial: A.L., the lead investigator (who introduced the two photographs), and an expert. Geary denied all allegations and provided evidence that A.L. was a pathological liar. He could not satisfactorily explain how the two photos ended up on his phone. Ultimately, the proof of the prior sexual misconduct demonstrated evidence of motive, intent, plan, or modus operandi. Admission of the evidence did not constitute abuse of discretion. Arguably, even if said admission was an abuse of discretion, the agreed order minimized it to harmless error.

**C.    The trial court did not abuse its discretion in preventing the cross-examination of A.L. about prior false abuse allegations.**

Geary claims that he should have been allowed to cross-examine A.L. regarding prior false abuse allegations. He argues these accusations were

pertinent to her credibility. The Commonwealth asserts this evidence was irrelevant, and the trial court correctly denied its admission during the trial.

During the trial, Geary sought to cross-examine A.L. about a prior allegation. The Commonwealth objected because A.L. was nine years old when she made the allegation against her brother and cousins, and because it did not involve sexual conduct. There was some disagreement between the parties over whether A.L. admitted to lying in her forensic interview or whether she had claimed it was nothing and had been blown out of proportion. The trial court allowed A.L. to testify by avowal before ruling. She testified that her brother and two of her cousins had taped her to a bed and written on her face with a Sharpie. She admitted that the allegations were false. After hearing A. L.'s avowal testimony, the trial court denied Geary's request to cross-examine her about the prior statement.

Geary contends that A.L.'s previous false abuse allegation was admissible to impeach her credibility and truthfulness. He contends this false allegation was relevant to her truthfulness, like testimony of character under KRE 608(a). He contends that evidence of a prior crime may be used to impeach a witness, even though it does not relate to the witness's trial testimony. KRE 609.

As noted *supra*, we review the trial court's evidentiary rulings for an abuse of discretion. *Goodyear Tire*, 11 S.W.3d at 577. "The test for abuse of discretion is whether the trial court's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *English*, 993 S.W.2d at 945.

14

Under KRE 608(b), extrinsic evidence of specific instances of a witness's conduct meant to attack or support the witness' credibility may not be admitted. But, at the trial court's discretion, they may be inquired into during cross-examination if they are probative of the witness' truthfulness or untruthfulness. *Id.* There must be a factual basis for the inquiry. *Id.* Geary asserts that he should have been permitted to cross-examine A.L. using the prior allegation. However, KRE 608(b) evidence must still be relevant to be admissible. KRE 402.

"Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." KRE 401. A.L.'s allegation when she was nine years old about her brother and cousins taping her to a bed and using a Sharpie on her face was a prank, and not an allegation of sexual misconduct. This fact did not determine whether the current allegation was more or less probable than it would have been without the evidence. Notably, there was other evidence offered by both the Commonwealth and Geary regarding A.L.'s truthfulness. The lead investigator testified that there were inconsistencies in A.L.'s statements, and her mother testified that she was a pathological liar. Thus, we find this evidence was not relevant to A.L.'s truthfulness about the sexual abuse allegations against Geary. Because we find that the evidence was not relevant, the trial court did not err in excluding it.

15

**D.** **The trial court did not abuse its discretion in declining to give jury instructions for lesser-included offenses.**

Geary asserts that the trial court erred by not giving a lesser-included offense instruction on possession of matter portraying a sexual performance by a minor (under 16 years of age). He requested an instruction under KRS 531.335, possession or viewing of matter portraying a sexual performance of a minor, which is a Class D felony. The trial court and counsel discussed jury instructions at length.

While discussing the jury instructions, defense counsel argued that the facts supported a charge of possession of child sexual abuse material as a lesser-included offense to promoting a sexual performance by a minor. The Commonwealth stated that it was not a lesser-included offense. Still, it acknowledged that the jury could find that he possessed child sexual abuse material instead of producing it and did not initially argue against the instruction. After further research, the Commonwealth notified the trial court that a possession instruction requires actual knowledge, which was not present in this case. The trial court did not find any lesser-included instruction available for the charge.

We review a trial court's ruling regarding jury instructions for abuse of discretion. *Cecil v. Commonwealth*, 297 S.W.3d 12, 18 (Ky. 2009) (citation omitted). It is the trial court's duty to instruct the jury "on the whole law of the case." *Taylor v. Commonwealth*, 995 S.W.2d 355, 360 (Ky. 1999) (citations omitted). The general rule is that if requested, a trial court must give a lesser-included offense instruction if, but only if "considering the totality of the

16

evidence, the jury might have a reasonable doubt as to the defendant's guilt of the greater offense, and yet believe beyond a reasonable doubt that he is guilty of the lesser offense.'" *Commonwealth v. Swift*, 237 S.W.3d 193, 195 (Ky. 2007) (quoting *Houston v. Commonwealth*, 975 S.W.2d 925, 929 (Ky. 1998)).

Possession of matter portraying a sexual performance by a minor is not a lesser included offense of promoting a sexual performance by a minor (under 16 years old). To be guilty of possession of matter portraying a sexual performance by a minor, a person, "having knowledge of its content, character, and that the sexual performance is by a minor . . . [k]nowingly has in his . . . possession or control any matter which visually depicts an actual sexual performance by a minor person[.]" KRS 531.335(1)(a). A person promotes the sexual performance by a minor when, "knowing the character and content thereof, he . . . produces, directs, or promotes any performance which includes sexual conduct by a minor[.]" KRS 531.320(1). Sexual conduct by a minor includes the exposure of the unclothed female breast. KRS 531.300(4)(d). And the word "promote" under the statute is defined as "prepare, publish, print, procure, or manufacture[.]" KRS 531.300(3).

Geary contends the jury could have easily concluded that he only possessed the two photographs under KRS 531.335 and did not create or manufacture them under KRS 531.320. He testified he did not know the photos were on his phone and that they were never published to anyone. Both experts testified that the origin of the pictures was unknown, but the thumbnails were consistent with the transfer of data from one phone to another.

17

A.L. testified that Geary photographed her with her shirt raised while She pretended to be asleep. These images were then found on Geary's phone. Geary testified that he did not take the photographs and did not know they were on his phone or how they got there. Considering the totality of the evidence, if the jury had reasonable doubt as to Geary's guilt of promoting, they would have found him not guilty. The jury could not believe beyond a reasonable doubt that he was guilty of possession, given that he testified that he did not know the photographs were on his phone. So, a lesser-included instruction was not warranted. The trial court did not abuse its discretion.

**E.      Cumulative error did not occur.**

In the event this Court were to hold that none of the foregoing alleged errors were individually reversible, Geary requests that we reverse based on cumulative error. Under the cumulative error doctrine, multiple errors, which are harmless on their own, cumulatively render the trial fundamentally unfair and require reversal. This Court has "found cumulative error only where the individual errors were themselves substantial, bordering, at least, on the prejudicial." *Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky. 2010). "If the errors have not 'individually raised any real question of prejudice,' then cumulative error is not implicated." *Elery v. Commonwealth*, 368 S.W.3d 78, 100 (Ky. 2012) (quoting *Brown*, 313 S.W.3d at 631). Accordingly, because none of Geary's allegations constituted reversible error, the cumulative error doctrine does not require that we reverse his conviction.

18

### III. CONCLUSION

For the reasons stated above, we affirm the judgment of the Meade Circuit Court.

All sitting. Lambert, C.J.; Bisig, Conley, Goodwine, and Keller, JJ., concur. Nickell, J., concurs in result only by separate opinion in which Thompson, J., joins.

NICKELL, J., CONCURRING IN RESULT ONLY: Respectfully, I concur in result only and write separately to maintain consistency with my prior views on waiver and the modus operandi exception to KRE 404(b). *See Knox v. Commonwealth*, 2022-SC-0384-MR, 2024 WL 3049799, *11-12 (Ky. June 13, 2024) (Nickell, J., concurring in part, dissenting in part); *Jordan v. Commonwealth*, 2022-SC-0288-MR, 2023 WL 8639367, *13-16 (Ky. December 14, 2023) (Nickell, J., dissenting). In my estimation, Geary did not waive appellate review of the admissibility of his 2009 misdemeanor conviction for sexual misconduct by entering into the agreed order. Moreover, I would hold the trial court abused its discretion by admitting this evidence under KRE 404(b). Nevertheless, I agree with the majority that any error in this regard was harmless, albeit for different reasons.

First, as the majority correctly observes, the circumstances surrounding the agreed order of January 5, 2024, are confusing and unclear. *Ante*, at 8 n.9. On June 19, 2023, the Commonwealth provided notice, under KRE 404(c), of its intent to introduce the prior misdemeanor conviction at trial. Geary responded in opposition the next day, June 20, 2023, arguing the

19

evidence was inadmissible. Later, on December 5, 2023, Geary filed a motion in limine seeking to "exclude any reference at trial" to the prior conviction and noticed the motion for a hearing on January 5, 2023, three days before the date of trial.

Although a recording of the January 5, 2023 hearing on Geary's motion in limine was not included in the present record, the parties entered into an agreed order which was accepted by the trial court on the same day and stated as follows:

> Upon agreement of the parties, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** that this court excludes any reference at trial to Meade District Court Case No. 09-M-354, except for purposes of prosecuting cross-examination.

Notably, the text of the agreed order originally provided the prior conviction was only admissible "for purposes of impeaching Defendants [sic] testimony." However, this phrase was crossed out by hand and replaced by the expansive provision quoted above.

Regardless of the agreed order's content, the trial court repeatedly entertained the parties' continued arguments on multiple subsequent occasions regarding the scope and merits of the admissibility issue relating to the 2009 conviction. In short, the agreed order did not settle the matter, as the parties and the trial court continued to revisit the issue.

For example, on the morning of January 8, 2024, the first day of trial, Geary argued the 2009 conviction was not admissible on any basis. The Commonwealth responded it was not seeking to use the prior conviction for impeachment purposes, but rather, as substantive evidence of the absence of

20

accident or mistake and modus operandi under KRE 404(b). No mention of the previous agreed order was made at the conference and the trial court proceeded to rule that the prior conviction was admissible under KRE 404(b).

The parties again argued the issue during Geary's testimony at trial. There, when the trial court sustained Geary's objection to the Commonwealth's inquiries into the topic of accident or mistake, the Commonwealth proceeded to question Geary as to the factual *claims* underlying the present allegations made by A.L. as follows:

**Com.:** These allegations occurred at night, is that correct?

**Geary**: Correct.

**Com.**: Allegedly, when everybody else was sleeping, right?

**Geary**: Correct.

**Com.**: At your mother's house, right?

**Geary**: Correct.

**Com.**: With somebody else in the bed, right? You can answer, sir.

**Geary**: Yes.

**Com.**: And she says it was against her consent, right?

**Geary**: Yeah.

The Commonwealth then approached the bench and specifically requested permission to inquire into the circumstances of the 2009 conviction as evidence of modus operandi. Geary objected and asserted the two events were factually dissimilar. The trial court overruled Geary's objection. Again, the

21

parties did not mention the agreed order or the trial court's prior ruling on this issue.

Thereafter, toward the conclusion of Geary's testimony on redirect, defense counsel approached the bench and stated, "Judge, I was caught off guard with this [the evidence of the 2009 conviction], I did not think this would ever come in, it shouldn't have come in, I need some time." In response, the trial court ordered a recess for lunch. When the proceedings resumed, Geary presented the trial court with caselaw in support of his argument asserting the 2009 conviction did not satisfy the requirements of the modus operandi exception to KRE 404(b) and further requested the trial court to reconsider its ruling on admissibility. The Commonwealth responded on the merits and argued for the first time that the evidence was properly within the scope of the agreed order. The trial court refused to reconsider its ruling on admissibility and stated, "I have let it in, so let's move on."

Based on my review of the record, I cannot conclude the present circumstances reflect Geary's "knowing relinquishment of a right[.]" *Quisenberry v. Commonwealth*, 336 S.W.3d 19, 38 (Ky. 2011). Certainly, Geary's failure to include the record of the hearing on his motion in limine has hampered appellate review of this issue. However, while prejudice may not be presumed by a silent record, a reviewing court similarly may not predicate or imply a finding of waiver on the basis of such silence. *See Sloss v. Commonwealth*, 709 S.W.3d 102, 134 (Ky. 2024) (Nickell, J., dissenting).

In the present matter, there is no indication Geary's counsel remained acquiescent or otherwise idle in the face of unmistakable aggrievement. *United States v. Gates*, 709 F.3d 58, 63 (1st Cir. 2013). Additionally, I discern no evidence of gamesmanship, sandbagging, or other "hide the ball" tactics here. *Id.* Moreover, the extensive argument and multiple rulings by the trial court on the merits of the KRE 404(b) issue following the entry of the agreed order convinces me the scope and terms of any such agreement were ambiguous at best, if not entirely illusory. Because the totality of the circumstances does not clearly manifest Geary's intent to waive his claim of error regarding the admissibility of the prior conviction under KRE 404(b), I would treat this issue as properly preserved and reject the Commonwealth's argument on waiver.

Second, having determined no waiver of the KRE 404(b) issue occurred, I also part ways with the majority regarding its analysis on the merits. In my view, the facts underlying the 2009 conviction are not "strikingly similar" to the facts of the present matter. Thus, I would hold this evidence was admitted in error.

When considering the admissibility of modus operandi evidence, our precedents require the degree of similarity to evince a *signature crime. Woodlee v. Commonwealth*, 306 S.W.3d 461, 466 (Ky. 2010). Indeed, the inference gleaned from modus operandi evidence "is more persuasive if there are at least two or three prior acts or crimes with many common features." Christopher B. Mueller & Laird C. Kirkpatrick, 1 *Federal Evidence* § 4:36 (4th ed. 2023). Moreover, the requisite commonalities must be truly "unique or highly

23

distinctive" and "[a]cts that are typical or predictable, commonplace or routine, cannot qualify." *Id.* (footnotes omitted). To guard against the extreme prejudicial effect of prior sexual misconduct, our precedents require "a difficult, fact-specific inquiry" before such evidence may be deemed admissible under KRE 404(b). *Clark v. Commonwealth,* 223 S.W.3d 90, 96 (Ky. 2007). Such "[s]pecial precautions are critical, to minimize the naked propensity logic" inherent in the admission of prior criminal acts. *Gasaway v. Commonwealth,* 671 S.W.3d 298, 334 (Ky. 2023) (quoting Robert G. Lawson, *Kentucky Evidence Law Handbook,* § 2.30[4][b] (2022)).

Here, the ages of the victims and their respective relationships to Geary clearly differed. The 2009 incident involved a 19-year-old Geary and a 15-year-old victim,[11] and, as the majority notes, Geary's 2009 sex offender assessment concluded this "offense [was] clearly an episode of adolescent sexual expression between individuals functioning as peers." Ante, at 9 n.10. By contrast, the charges in the present case relate to sexual acts perpetrated by a 32-year-old Geary upon the 13-year-old daughter of his girlfriend.

Further, the sexual acts at issue in the two cases were also distinguishable. The 2009 matter involved ordinary sexual intercourse while the present charges involved allegations that Geary touched A.L. in a sexual manner with his hands and also forced her to touch his sexual area.

---

[11] At the time of Geary's 2009 conviction, he was 20 years old, and the victim was 16 years of age.

Finally, the present appeal involved criminal behavior absent from the prior conviction. Particularly, there is no indication that Geary took photographs of his victim in 2009 whereas in the present appeal, he was alleged to have photographed A.L. as the abuse occurred.

Moreover, many of the similarities between the 2009 and 2022 criminal incidents are generic and do not rise to the idiosyncratic level of a signature. For example, the fact that these incidents, separated by well over a decade, occurred at night is not significantly distinctive. Similarly, the fact that Geary perpetrated both acts while residing with his mother in her home is not especially unique, particularly since she was domiciled in a house in 2009 while living in an apartment in 2022. Indeed, when considering the common location of criminal acts for the purpose of modus operandi evidence, our precedents have focused on the specific areas of a residence as opposed to the overall premises. *See Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (noting "[e]ach incident occurred . . . presumably in a living room area as opposed to, *e.g.*, a bedroom."). Notably, for purposes of our analysis in the present appeal, the location within his mother's respective residences where Geary committed each crime differed significantly. The 2009 crime was committed in the separate basement area of an occupied house while the 2022 crime was alleged to have occurred in a shared bedroom.

Assuming, *arguendo*, that the presence of others asleep nearby at night inside the mother's residence could reasonably be characterized as comparatively striking and remarkable, our precedents have recognized that

25

"significant temporal remoteness" between the prior bad act and the present charges diminishes "[a]ny probative value 'which [the] resemblance might endue[.]'" *Robey v. Commonwealth*, 943 S.W.2d 616, 618 (Ky. 1997) (quoting *Gray v. Commonwealth*, 843 S.W.2d 895, 897 (Ky. 1992)). In *Robey*, we held "[t]he evidence of a single sixteen-year-old conviction, although the crimes had similar aspects, was simply too remote" for admission under KRE 404(b). *Id.* While there is no bright-line rule regarding the temporal remoteness of a prior bad act, we explained

> [t]he requirement that the prior act be "not too remote" is integral to determining the probative value of the evidence. Thus, an independent act too remote in time will fail the balancing test required by KRE 403.
>
> The prosecution is not privileged to show unconnected and isolated unlawful conduct that had no bearing upon the crime under scrutiny.

*Id.* In my view, the logic of *Robey* which rejected the use of a single 16-year-old conviction applies with equal force to the use of the single 14-year-old conviction[12] at issue in the present appeal, particularly considering the numerous salient discrepancies between the two events.

In conclusion, while I would have determined the evidence of the prior conviction to have been inadmissible, I nevertheless agree with the majority that any such error was harmless. In so doing, however, I differ from the majority's assertion that the parties' entry into the ill-defined and controverted agreed order waived or minimized the prejudicial effect of this inadmissible

---

[12] Geary's misdemeanor conviction was entered on September 9, 2009. Trial in this present matter commenced on January 8, 2024.

26

evidence.  Given defense counsel's continued strenuous objections throughout trial, and without a more definitive record, I cannot fathom why one would have lucidly entered into such an agreed order allowing the use of a 14-year-old misdemeanor conviction for use on cross-examination.[13]  Instead, I would simply conclude the error was harmless in light of the overwhelming evidence of guilt on the present charges, particularly the photographic evidence.  *See Justice v. Commonwealth*, 636 S.W.3d 407 (Ky. 2021), *abrogated on other grounds by Sexton v. Commonwealth*, 647 S.W.3d 227 (Ky. 2022).  Therefore, I respectfully concur in result only.

Thompson, J.; joins.

---

[13] At the hearing on January 8, 2024, defense counsel specifically acknowledged and correctly asserted the prior misdemeanor conviction could not be used for impeachment under KRE 609 which generally limits the scope of impeachment to felony convictions.

COUNSEL FOR APPELLANT:

Douglas E. Miller
Miller & Durham, PLLC


COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Kristin L. Conder
Todd D. Ferguson
Assistant Attorneys General